```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION
                    CASE NO. 16-22484-CIVIL-ALTONAGA
3

4    ALAN L. FRANK                    Miami, Florida
     LAW ASSOCIATES, P.C.,
5
                      Plaintiff,      August 18, 2016
6
             vs.                      10:30 a.m.
7
     OOO RM INVEST, et al.,
8
                      Defendants.     Pages 1 to 32
9    _____

10
                        DISCOVERY HEARING
11         BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
               UNITED STATES MAGISTRATE JUDGE
12        (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)

13   APPEARANCES:

14
     FOR THE PLAINTIFF:      ALAN L. FRANK, ESQ.
15   (Appearing              ALAN L. FRANK LAW ASSOCIATES, PC
      Telephonically)        135 Old York Road
16                           Jenkintown, Pennsylvania 19046

17   (Appearing              STEVEN B. HERZBERG, ESQ.
      Telephonically)        1108 Kane Concourse, Suite 309
18                           Bay Harbor Islands, Florida 33154

19
     FOR THE DEFENDANTS      SAMUEL M. SHELDON, ESQ.
20   OOO RM INVEST,          THE BEHAR LAW FIRM, P.A.
     VARWOOD HOLDINGS &      17501 Biscayne Boulevard
21   KATCAEV:               Suite 460
                             Miami, Florida 33131
22

23   FOR THE RB INVEST       NATASHA DORSEY, ESQ.
     PARTIES:                RIMON LAW, P.A.
24   (Appearing              112 Via Castilla
      Telephonically)        Jupiter, Florida 33458
25
```

```
 1   TRANSCRIBED BY:        LISA EDWARDS, RDR, CRR
                            Official Court Reporter
 2                          United States District Court
                            400 North Miami Avenue
 3                          Twelfth Floor
                            Miami, Florida 33128
 4                          (305) 523-5499

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Good morning.

 2              We're here today in the case of Alan Frank Associates

 3    versus OOO RM Investments, Case No. 16-Civil-22484.

 4              Could I have appearances, for the Plaintiff first.

 5              MR. FRANK:  Your Honor, good morning.  My name is Alan

 6    Frank.  I'm appearing pro hac vice.  Thank you.  I thank the

 7    Court for admitting me on that basis.

 8              THE COURT:  Yes.

 9              Anybody else here for the Plaintiff?

10              MR. HERZBERG:  Steven Herzberg for the Plaintiff as

11    well.

12              THE COURT:  Okay.  And who's here for -- who is here

13    for Varwood Holdings?

14              MR. SHELDON:  Good morning, your Honor.   Samuel

15    Sheldon on behalf of Varwood, RM and Mr. Katcaev.

16              THE COURT:  Okay.  And who's here on behalf of the

17    other Defendants?

18              MS. DORSEY:  Good morning, your Honor.  This is Natasha

19    Dorsey.  And we are appearing on behalf of the RM Invest

20    parties, which include Sasha Schmdt and Sergey Pirozhnikov.

21    And pending this Court's resolution of the motion to determine

22    representation of RM Invest, we also are appearing essentially

23    on behalf of RM Invest.

24              THE COURT:  Okay.  Is anyone else on the phone?  No?

25    Okay.
```

1          Before we get started on this discovery issue, I wanted

2     to address this motion, because I was taking a look at it, the

3     motion to -- let me see what it's entitled -- it's actually a

4     couple of motions that I'm concerned with here.  One is a

5     motion to determine representation of RM Invest.

6          That's the one you just spoke of, Ms. Dorsey.  Correct?

7          MS. DORSEY:  Correct, your Honor.

8          THE COURT:  Yes.  Well, I was reading through this

9     motion before this just to familiarize myself with the case.

10    And I was kind of familiar with it before that.  But there's

11    no -- there's no memorandum of law incorporated in this thing

12    or referred to in this thing.  It's just a stream of

13    consciousness or facts that you believe are true with a couple

14    of affidavits attached.  But I don't see anything that tells me

15    how I'm supposed to rule on this, other than, you know, you say

16    certain facts and the other side says other facts.

17         So I'm striking this.  And you can -- if you'd like to

18    refile it, you need to refile it pursuant to local Rule 7.1(a),

19    which requires that a memorandum of law be either incorporated

20    or -- well, "incorporated," I think is what the wording is in

21    the rule.  You have to have a memorandum of law to support what

22    you're asking the Court to do.

23         There's no memorandum here.  I have no idea what the

24    law is on it.  So until you're able to do that, I'm not going

25    to address that issue.

```
 1              The second problem I have is the motion to dismiss the

 2     cross-claim that was filed at Docket Entry No. 56.

 3              This case started out in New York, if I'm not mistaken.

 4     And this would be --

 5              Mr. Sheldon, I think this is your motion.  Right?

 6              MR. SHELDON:  Yes, your Honor.

 7              THE COURT:  Okay.  Since this case started out in

 8     New York or since these original filings I recall were filed in

 9     New York, then I said to refile them here in Miami.  You

10     refiled them here in Miami on June 28.  But something happened

11     before that; and that had been that, as I understand it,

12     anyways, that this arbitration court in Russia somewhere

13     said -- issued some kind of opinion relating to who the

14     director is of this company.  Correct?

15              MR. SHELDON:  Correct.  The -- who the director is, I

16     believe, is one of the ultimate legal questions at issue.

17              My understanding of the order is one of preliminary

18     relief maintaining the status quo, whereby my client rep,

19     Mr. Grootsin [phonetic], remains the director of RM.

20              THE COURT:  Okay.  But none of that is addressed in

21     your motion to dismiss the cross-claim, even though this is

22     dated June 28th.

23              MR. SHELDON:  That's right, your Honor.  It was my --

24     my understanding of the local rules, you know, was that when I

25     refiled it, that what I refiled should be substantially similar
```

1    to what I filed in New York and not a new motion.

2          THE COURT:  Okay.  Well, I disagree with that.  So I'm

3    striking that motion to dismiss the cross-claim with leave to

4    refile it --

5          MR. SHELDON:  Okay.

6          THE COURT:  -- within 20 days.

7          And to address -- to me, one of the biggest issues in

8    this case is -- I mean, the issue is:  Who makes the decision

9    of what happens to RM Invest's money?  And, you know, it's like

10   two ships passing in the night, because no one's talking about

11   it; and then all of a sudden the reply which is filed in July

12   finally addresses it briefly.

13         But then there's no -- I don't get to hear from the

14   other side about what they say about that, which I'm very

15   interested in.  I mean, I know you all filed a motion for

16   sanctions, saying that the Russian court has now said this.

17   Judge Altonaga struck that.  But I will tell you that even

18   though that's been stricken, that doesn't mean there's not

19   going to be sanctions in this case if a party's moving forward

20   when -- if an issue has been decided by the Russian court

21   that's binding on this Court.

22         MR. SHELDON:  Understood.

23         THE COURT:  So everybody needs to think about that when

24   you're filing stuff.

25         All right.  What's the problem with the discovery in

```
 1    this matter?
 2           MR. SHELDON:  Your Honor, may I stand at the lectern?
 3           THE COURT:  Yes.  Sure.
 4           MR. SHELDON:  Thank you.
 5           THE COURT:  You just have to be by a microphone.
 6           MR. SHELDON:  So we --
 7           MR. FRANK:  Your Honor, may I address the Court before
 8    you -- on account of my request, the Plaintiff's request, that
 9    this terms designee not be deposed?
10           THE COURT:  Okay.  Well --
11           MR. FRANK:  May I proceed?
12           THE COURT:  I don't know.  Who set this down for a
13    hearing?
14           MR. SHELDON:  That would be me, your Honor.
15           THE COURT:  So are you going to argue the reverse of
16    that, why it shouldn't be?
17           MR. SHELDON:  Yeah.  And just very briefly.
18           THE COURT:  I'm going to let him proceed, and then you
19    can respond.
20           MR. SHELDON:  Very quickly:
21           You know, when we submitted our joint scheduling
22    report, I think the consensus among counsel was that, you know,
23    there really wasn't any need for discovery at this time and
24    that, you know, our position, my client's position, is that
25    discovery should be stayed pending resolution of the motion to
```

1    dismiss, which, as the Court knows, has now been fully briefed

2    and is pending.

3           Judge Altonaga did not -- expressly did not stay

4    discovery.  And the schedule -- the discovery schedule set is,

5    you know, pretty aggressive.  We have expert reports due on

6    September 19th and all discovery is scheduled to be completed

7    by October 13th.  So that's less than two months.

8           In the event that the motion to dismiss is denied, my

9    clients have compulsory counterclaims that will need to be pled

10   in this proceeding.  Specifically, it is my clients' position

11   that the contingency fee agreement pursuant to which

12   Mr. Frank's firm has taken 20 percent of the settlement

13   proceeds is not enforceable and that his compensation -- or his

14   firm's compensation, rather, should be based upon quantum

15   meruit.

16          That would need to be resolved in this proceeding.

17          We also submit that the Frank firm by failing to

18   identify RM's duly authorized constituent at the outset of that

19   representation by counseling our --

20          THE COURT:  Stop just a second.  Start that second

21   argument again.

22          MR. SHELDON:  So the second argument is that, you know,

23   Mr. Frank's firm had a duty at the outset of its representation

24   of its clients, who are now my clients, to know who its client

25   was, who directs litigation on RM's behalf.

 1          And if the Frank firm had known that, it would have --

 2    it would not have entered into an aggregate settlement

 3    agreement.  Mr. Frank's firm would have looked to RM's

 4    director, would have looked to Mr. Katcaev, would have looked

 5    to the duly authorized constituent of Varwood, and they would

 6    have determined how -- among themselves how the settlement

 7    monies should be divided.

 8          Instead, what happened is Mr. Frank's firm looked to

 9    Mr. Katcaev and Mr. Schmdt and Mr. Pirozhnikov, who are --

10    collectively own the company.  And we submit that that was a

11    breach of duty to RM, to the other clients.  And, you know, as

12    a -- and then the Frank firm invited Mr. Schmdt and

13    Mr. Pirozhnikov, who were not the Frank firm's clients, to lay

14    claim to its clients' money.

15          We submit that that conduct collectively constitutes a

16    breach of duty; and in the event that we're required to plead,

17    these are compulsory counterclaims that will have to be raised.

18          Now -- and so it's on that basis that I served the

19    discovery notice, the deposition notice, of the Plaintiff,

20    which is attached as Exhibit A to the notice of hearing.

21          Mr. Frank has taken the position that he -- rather --

22    this was -- this depo notice was not directed to him

23    personally, but it sought a 30(b)(6) depo of the Plaintiff

24    entity, the Frank firm.

25          Mr. Frank has taken the position -- and which he can

1   explain for himself -- that his firm is not subject to

2   deposition and has in response sent subpoenas and deposition

3   notices to me -- and I say "sent," because these subpoenas were

4   not served.  They need to be hand-delivered, pursuant to the

5   rules, and they were not -- seeking my deposition personally,

6   that of my partner, and a 30(b)(6) representative of my firm,

7   whereas the Frank firm is the Plaintiff in this case.

8           Neither I nor my partner nor my firm are parties.  We

9   are simply acting as advocates.  Our conduct is not at issue in

10  this case, unlike the Frank firm.  Its conduct vis-à-vis and

11  its obligations vis-à-vis the Defendants, that's the subject

12  matter of this case.

13          And we submit respectfully, of course, that this is

14  really nothing more than a transparent attempt to harass me and

15  my partner and to attempt to deter us from vindicating any

16  claims that we may have against the Frank firm.

17          Mr. Frank has indicated to me and insisted upon

18  including in our joint scheduling report his intention or

19  rather his firm's intention that in the event that

20  counterclaims are filed, he intends to bring a claim against me

21  personally and my firm and my partner.

22          How -- upon what legal theory that would make any

23  sense, I cannot tell you.  But that is the motivation behind

24  the subpoenas that were sent to me, and why I believe that they

25  are entirely inappropriate and why that discovery should not be

permitted to proceed.

There were also deposition notices sent to me, three deposition notices -- I'm sorry -- four deposition notices: one to each of my three clients and one to Mr. Grootsin, who is the director general of RM.

Now, as the Court knows, depositions by notice can only be taken against parties.  To the extent that the Frank firm wants to depose an individual employee of RM, that needs to be done by subpoena and that should take place in Russia, whereas this deposition notice commanded Mr. Grootsin to appear here in Miami.

Similarly, my understanding of the case law is that it is conventional for 30(b)(6) depositions to be taken at the principal place of business of a party.  In this case, Varwood's principal place of business is in Switzerland and RM's is in Russia.  And neither RM nor Varwood nor Mr. Katcaev have sought any affirmative relief in this action.

And so we submit that it would be highly burdensome for them to have to appear here in Miami.

Moreover, if the Court were to look at the areas of inquiry designated in those 30(b)(6) depositions, they are entirely inappropriate insofar as they seek matters -- seek discovery relating to matters that are not reasonably calculated to the discovery of admissible evidence and seek to invade upon the attorney-client privilege and work-product

```
1    protection.

2            For example, in the 30 --

3            THE COURT:  Why don't we address these one at a time,

4    because --

5            MR. SHELDON:  Understood.

6            THE COURT:  Let's address first whether or not you

7    should be able to take the deposition of Alan Frank.  Is that

8    him personally or to his firm?

9            MR. SHELDON:  No.  It was to his firm.

10           MR. FRANK:  May I respond to that, your Honor?

11           MR. SHELDON:  It was to the Plaintiff.

12           MR. FRANK:  May I respond?

13           THE COURT:  Yes; in a second.

14           So that's what we're going to address first.

15           MR. FRANK:  Your Honor, counsel is really, truly

16   misinformed.  I know we're advocates today.  I understand that.

17   I'm sympathetic to the fact that everybody has a role.

18           But in this case, counsel -- there are key components

19   that he's just missing, not the least of which being that his

20   client, Tcahair, Mr. Katcaev, has testified clearly under oath

21   that each of the principals was to receive one-third of the

22   proceeds.  So counsel is either unaware of that or ignoring

23   that or -- I don't even know what.

24           But getting to the heart of it, the Court's presently

25   extant scheduling order sets September 9 as the date by which
```

1    pleadings are to be amended or parties are to be joined.

2          And there is a very short discovery period that is

3    therein, and that concludes on October 13th.

4          Today, my firm is an interpleader Plaintiff party.

5    That is all.  There are no counterclaims.  There are no

6    anything.

7          There are rough musings that counsel has made, such as

8    what you have heard this morning two minutes ago, that

9    Mr. Frank didn't have an appropriate fee agreement, Mr. Frank

10    didn't have an appropriate fee agreement.  But none -- there is

11    no actual averment that has been made, no claim.

12          By way of example, I can't even tell your Honor if

13    there's a claim here that's challenging my fee, the firm's fee,

14    or that's challenging our work.  If it's challenging our work,

15    then I have an insurance company I have to bring into this.  I

16    have to make sure that they're involved.

17          And under the present timeline here, from what I'm

18    hearing, if some or even one of the claims involved a claim of

19    malpractice, then my claim -- and I've articulated this to

20    Mr. Sheldon many times -- is going to be one for contribution,

21    because Mr. Sheldon has -- and his firm and his partner have

22    deliberately contributed to the lengthy period at a minimum of

23    how long the monies have been held.

24          Mr. Sheldon, by way of example, instructed me in

25    writing to not interplead (inaudible) for months until one day

1    filed a motion when he did want them filed.

2         Mr. Sheldon's firm today has -- is representing

3    Varwood, which is a creature owned by Mr. Katcaev.  And

4    Mr. Sheldon on his own reached an agreement allegedly between

5    RM Invest on the one hand and Varwood on the other to equally

6    divide the proceeds.  And we believe that anything that

7    Mr. Sheldon did and his firm did will contribute to our --

8    whatever damages can possibly be articulated against us.

9         But again, at this moment in time, I don't even know

10   what the claims are against this firm.

11        THE COURT:  Okay.

12        MR. FRANK:  And he has asked me to appear, a laundry

13   list of matters that he's asking me to identify, all basically

14   zero in on allegations of malpractice.  I have a four-subject

15   listing:  firm's engagement, our firm's engagement by RM,

16   Varwood and Katcaev, co-counsel arrangement, circumstances

17   surrounding the settlement agreements and our firm's conduct.

18        But I don't have a claim.  Due process, your Honor,

19   really does require that I be served with actual notice, not

20   innuendo, of what claims it is Mr. Sheldon wants to pursue.

21   And not only that, but this firm should, if it's going to be

22   brought in on claims of some kind -- which, again, I can't

23   really articulate what they are because Mr. Sheldon is not

24   really telling us -- I should be able to add the Defendants --

25   the third-party Defendants in for contribution before

1    expiration of the deadline on September 9.

2         So we're in a bit of a bind here because on the one

3    hand we don't know what Mr. Sheldon's counterclaims are going

4    to be.  We know Mr. Sheldon has not read the record, or he

5    wouldn't be making many of these claims.  There's no way.

6         But if he hasn't made the claims, how can this firm in

7    all fairness produce a 30(b)(6) designee to respond to subject

8    matters that may lead to a claim?  And then to compound that

9    problem, after we are served, if we are served with the claim

10   or claims, then we'll be beyond September 9 by which to bring

11   in third parties to this case.

12        So we have a problem, your Honor.  And part of the

13   problem is that Mr. Sheldon hasn't really read the record,

14   doesn't really know what has happened, has thrown much mud

15   around, has tied this thing up for a lengthy period.  But

16   ultimately, he hasn't articulated a claim.

17        I'm loath to present a designee to respond, partly

18   because I don't know if we'll upset the insurance coverage.  I

19   don't even know what the claims are officially.  I have a right

20   to know what they are.  We don't know what they are.

21        THE COURT:  Okay.  You're repeating yourself now.

22        MR. FRANK:  Then compound --

23        THE COURT:  Mr. Frank, you're repeating yourself.

24   Okay?  Let's get to the point.  We're not going to, you know,

25   just have a monologue here for 45 minutes.  We've got half an

```
 1    hour to conduct this hearing.  You're saying stuff over and

 2    over again.

 3              I understand what your argument is.

 4              MR. FRANK:  Thank you.

 5              THE COURT:  Does any of this stuff relate to the

 6    pending claim, your -- the interpleader claim?

 7              MR. FRANK:  No.  None of these topics -- none of these

 8    topics, your Honor, address interpleader.  We --

 9              THE COURT:  What about the circumstances --

10              (Speaker overlap.)

11              MR. FRANK:  -- take the money to court --

12              THE COURT:  What about the circumstances surrounding

13    this settlement agreement?

14              MR. FRANK:  The settlement agreement -- all the parties

15    that are named as interpleader Defendants signed the agreement.

16              Mr. Sheldon's key client, Tcahair, testified that we're

17    supposed to share equally.

18              I don't -- I don't know what else they could be -- I

19    really don't see how testimony from this firm will bear on the

20    fight going on between the interpleader Defendants, your Honor.

21    How could it?

22              THE COURT:  You're asking me.  I don't know.  I'm

23    asking you.  I'm asking -- I'll ask Mr. Sheldon.

24              MR. FRANK:  We received -- we went to Finland and had

25    an engagement letter signed.  The two attendees were Tcahair
```

```
 1    and Mr. Schmdt, which is presently -- of who is presently --

 2             THE COURT:  Who is Tcahair?

 3             MR. FRANK:  That's Mr. Katcaev.

 4             THE COURT:  Okay.  Well, let's call him Katcaev, all

 5    right?  Because that way it's consistent.

 6             MR. FRANK:  Yeah.  All right.

 7             THE COURT:  Sometimes you call him Katcaev, sometimes

 8    Tcahair.

 9             MR. FRANK:  We circulated an engagement letter --

10             THE COURT:  I'm not asking you.  I'm not deposing you

11    now.  I'm going to ask Mr. Sheldon.

12             Why -- well, first of all, you don't get discovery on

13    claims that you think you might bring next week or next month

14    or some other time.  And I don't know if those claims that you

15    want to bring are proper to bring with this lawsuit or not or

16    if you've got to go into state court to bring your -- it sounds

17    like a malpractice claim to me, in large part, although there's

18    also some claim regarding the amount of fees that were taken.

19             So what, if any, of this stuff relates to what's before

20    the Court, which is the claim in the interpleader, which is the

21    only thing that's before this Court right now?

22             MR. SHELDON:  Understood.

23             And, your Honor, I don't take issue with the argument

24    that we have not -- you know, that the matters that -- some of

25    the matters for which we're seeking discovery have not been
```

```
 1   pled.
 2           My concern is that when -- is that when the time comes
 3   to plead, my clients will not have time to conduct discovery.
 4           THE COURT:  That's something you're going to need to
 5   tell Judge Altonaga.
 6           MR. SHELDON:  Okay.
 7           THE COURT:  The same thing for Mr. Frank.
 8           You're going to have to tell Judge Altonaga if he
 9   brings a claim against you and you want to counter it.  Then
10   you're going to need to talk to Judge Altonaga and see if
11   she'll open up the --
12           MR. SHELDON:  The issue here -- the basis of the
13   interpleader is the Frank firm's supposed uncertainty as to who
14   it should be giving these monies to.
15           If the settlement agreement were so unambiguous and
16   conclusive, we would not be here.  This -- and so understanding
17   the circumstances surrounding the agreement, I -- to the extent
18   that any discovery is permitted in this case -- and I'm not
19   sure discovery is necessary.  I think that --
20           THE COURT:  Well, do you want to go forward with this
21   discovery or not?
22           MR. SHELDON:  I do.
23           THE COURT:  You're the one that's here.
24           MR. SHELDON:  Your Honor, I do.  But I'm saying, to the
25   extent that -- to the extent that discovery is permitted, you
```

 1   know, I think that understanding the circumstances surrounding

 2   the settlement agreement is critical to understanding these

 3   holes that form the alleged basis of Mr. Frank's uncertainty.

 4          THE COURT:  Okay.  The people who were Mr. Frank's

 5   clients are now your clients --

 6          MR. SHELDON:  Correct.

 7          THE COURT:  -- am I correct?

 8          MR. SHELDON:  Yes, sir.

 9          MR. FRANK:  That's not accurate, your Honor.

10          THE COURT:  Are they -- excuse me.  I'm talking.

11   Mr. Frank, you can't talk -- next time, why don't you come down

12   here and it'll be a lot easier, because it's very hard to

13   control --

14          MR. FRANK:  Sorry.

15          THE COURT:  -- what's going on when you keep coming in

16   from the telephone.

17          MR. FRANK:  Very well.

18          THE COURT:  Okay.  Your clients are waiving any kind of

19   attorney-client privilege?

20          MR. SHELDON:  Yes.  My clients are waiving

21   attorney-client privilege with -- with respect to the matters

22   for which we are seeking to depose Mr. Frank.

23          THE COURT:  Well, sometimes a waiver of attorney-client

24   privilege goes further than just what -- the questions you ask.

25   They go to, you know, subject matter.

1          MR. SHELDON:  Subject matter.

2          THE COURT:  Not to, you know, the particular question

3     that you happen to ask.

4          MR. SHELDON:  I don't believe that subject matter is

5     the law in the Eleventh Circuit.

6          THE COURT:  No?  What is it?

7          MR. SHELDON:  You know, I think it's -- that the waiver

8     extends to what in fairness -- you can't have selective waiver.

9     It extends to, you know, what in fairness the other party, you

10    know, should be able to discover.  You can't use privilege as a

11    sword and a shield, which we don't intend to do.

12         But, you know, the waiver of privilege with respect to

13    communications between Mr. Frank and his former clients would

14    not extend to the waiver of privilege between me and my

15    clients.

16         THE COURT:  No.  I would agree.  Generally, I would

17    agree with that statement.  Yes.

18         But I would most likely disagree that there are some

19    things that can be protected as to their conversations

20    regarding this litigation with Mr. Frank.  Once you open that

21    door, I think that door is going to open as to all their

22    conversations with Mr. Frank and, you know, any kind of advice

23    they got or what have you.

24         MR. SHELDON:  I don't disagree.

25         THE COURT:  All right.  So, Mr. Frank, back to you now.

1    The way I'm leaning on this thing is that you should be -- or

2    you or your law firm should be deposed regarding the

3    circumstances surrounding the settlement agreement.  Why is

4    that not relevant to the interpleader?

5         MR. FRANK:  Because -- because no one is challenging

6    the settlement itself.

7         THE COURT:  Well, the settlement would -- I presume, if

8    no one's challenging that, why don't you take the money out and

9    distribute it to whatever it says in the settlement agreement?

10        MR. FRANK:  Because the interpleader, as we've

11   researched it, as carefully as we can, is actually very clear.

12   And we -- it's not for this firm to measure or test or evaluate

13   the sufficiency of the claim or the alternative claims.

14        It's just rather that there are alternative claims to

15   the same funds.  Once that happens, our job is to pay it over

16   to the Court and (inaudible) back and let the parties sort it

17   out.  That's my understanding of the law, your Honor.

18        THE COURT:  Okay.

19        MR. FRANK:  So whether the settlement agreement was

20   clear or unclear, there are claims that now are being made for

21   the money *inter se* among the interpleader Defendants.

22        But no one is challenging the settlement at all.  No

23   one.  And they would be out of their mind.  It was a good

24   settlement.

25        So -- and at the time it was authorized -- I mean, I

    1    had direct conversations with Tcahair, and he's the one that

    2    proved it.  So practically speaking, for counsel to now

    3    challenge the sufficiency of -- I don't think he actually even

    4    is challenging the sufficiency of the settlement.  He's instead

    5    suggesting that somehow this firm should have taken steps to

    6    measure whose rights in the settlement were better than

    7    others'.  I don't think that's an appropriate step for this

    8    firm or any firm to take.

    9         We've researched that law as well.  We don't see any

   10    claims here against this firm as of yet.  We don't see any real

   11    reason for us to be deposed.

   12         And if we were deposed, we would request that this

   13    deposition take place in our principal place of business, which

   14    is just outside of Philadelphia.  We don't see any reason why

   15    we would have to fly to Florida to have a designee deposition

   16    taken in Florida when the law very clearly in the Southern

   17    District of Florida is that the presumption is that the

   18    nonresident corporate defendant should be deposed in its

   19    principal place of business.

   20         THE COURT:  No.  That's not the presumption.  That's

   21    the presumption if you're on the defendant's side of the V, not

   22    if you're on the plaintiff's side.

   23         MR. FRANK:  No, no.  We did not initiate this Florida

   24    proceeding, your Honor.  We initiated a New York proceeding.

   25    And on motion of counsel, it was transferred to Florida.  And

```
 1    we consented to it.  But we -- we are not postured -- even

 2    though we're Plaintiff -- I get that -- we did not actually

 3    initiate it in Florida.

 4          MR. SHELDON:  It was transferred because this is where

 5    it should have been brought.  And that was Judge Lindsay's

 6    ruling on -- pretty express about it at the hearing we had in

 7    New York.

 8          MR. FRANK:  She didn't say that.  She asked --

 9          MR. SHELDON:  She looked directly at Mr. Frank and

10    said, "You should never have filed this lawsuit here."

11          (Speaker overlap.)

12          MR. FRANK:  -- disagree, your Honor.

13          MR. SHELDON:  I don't see that as being in any way

14    equivocal.

15          THE COURT:  Okay.

16          MR. FRANK:  Your Honor, we --

17          THE COURT:  I'm finished hearing argument on this.

18          I'm going to allow the deposition.  It's only going to

19    be in regards to the circumstances surrounding the settlement

20    agreement.  And the deposition is to take place in the Miami,

21    Florida, area.

22          All right.

23          MR. FRANK:  Your Honor, we've asked the opportunity to

24    examine the -- several people on the Sam Sheldon side of this.

25    Again, we don't know what the claims are going to be.
```

```
 1              THE COURT:  Well, here's the deal:  You just made the
 2    argument.  You can't take -- Rule 26 has changed from 30 years
 3    ago.  You can only take discovery on claims that are pending,
 4    not claims that you'd like to take.  You know, discovery is not
 5    an opportunity to find new claims; it's an opportunity to
 6    investigate the claims that are pending before the Court.
 7              And so if you're talking about you want to depose
 8    somebody because you think he's going to file a cross-claim or
 9    some other kind of claim, that's not good.  When he files it,
10    then you can come to me and say:  Hey, we want to take this
11    discovery.  And if there's not enough time, then you can talk
12    to Judge Altonaga and say:  I need to take discovery now.  He's
13    saying that I committed malpractice or that I took too much
14    fee.  And then, you know, Judge Altonaga will decide if she's
15    going to allow you to expand your discovery dates.
16              But at this point in time, there is nothing pending, as
17    you just so eloquently told me for 20 minutes.  There's nothing
18    pending against you.  So how can you take --
19              MR. FRANK:  Your Honor, we --
20              THE COURT:  How can you take discovery regarding
21    something -- claims against you?
22              MR. FRANK:  Your Honor, the September 9 date looms
23    large.
24              THE COURT:  Yes.
25              MR. FRANK:  If we're going to add anybody, do I take
```

1  that issue up, your Honor, with Judge Altonaga?  Or should I

2  bring it up at this time with you?

3       THE COURT:  No.  I think it's in front of Judge

4  Altonaga, is my understanding.

5       Now, I would suggest you file a motion with her.  If

6  she, you know, decides that she wants to give me the authority

7  to change the scheduling order, then she'll do that.  But at

8  this point --

9       MR. FRANK:  Very well.

10       THE COURT:  -- in time, you're bound by her scheduling

11  order.

12       MR. FRANK:  Very well.

13       THE COURT:  Okay?  So the motion to quash the proposed

14  discovery by Alan Frank is granted.  And the deposition of Alan

15  Frank, 30(b)(6), will go forward only regarding what I said,

16  the circumstances surrounding the settlement agreement.

17       MR. SHELDON:  Thank you very much, your Honor.

18       THE COURT:  It doesn't mean malpractice.  That doesn't

19  mean, you know, what kind of fees he's taking.  It means the

20  issues that are before the Court in the interpleader.

21       MR. SHELDON:  Thank you, your Honor.  Understood.

22       THE COURT:  Okay.  Anything else I can help anybody

23  with?

24       MR. FRANK:  Nothing else for the Plaintiff, your Honor.

25  Thank you.

```
 1              THE COURT:  Are you guys going to keep litigating this
 2   case forever?  I mean, is there going to come some end someday,
 3   somewhere that this case is all going to finish up?
 4              MR. FRANK:  I can't -- I can't -- I mean, I know I'm an
 5   advocate.  I get that.  But I don't understand this.
 6              Mr. Katcaev -- Katcaev testified:  One-third,
 7   one-third, one-third.  And I don't understand why there is this
 8   fight.  I've never understood it and I still don't understand
 9   it.
10              THE COURT:  And what is your contention Mr. Katcaev
11   testified to?
12              MR. FRANK:  He -- I can send it to your Honor, if you
13   want to see it.
14              THE COURT:  No.  I don't want to see it.
15              MR. FRANK:  He was asked by opposing counsel, how is --
16   basically, the stake in the acquirer was said to be 30 percent,
17   total.  And opposing counsel asked how that 30 percent would be
18   divided.
19              And Mr. Katcaev -- now, remember, the language may be a
20   little bumpy, because it's being translated -- but it says,
21   well, 10 percent to Schmdt, 10 percent to -- the first name I
22   remember, Sergey.  I can't remember -- I can't pronounce his
23   last name.
24              THE COURT:  I know who you're talking about.
25              MR. FRANK:  And then 10 percent to me.
```

```
 1              And at the very end of this passage, he says:  Yes,
 2    equally among the three of us.
 3              That's -- that was done, like, the end of July of 2015.
 4    The case was mediated within weeks.  The case settled, I want
 5    to say, September.  So it was, like, done very -- that
 6    testimony was offered very close in time to settlement.  The
 7    settlement was circulated on that basis.
 8              And now we have a fight.  I don't -- I really don't
 9    understand it.
10              MR. SHELDON:  That's not --
11              MR. FRANK:  I've never understood it.
12              MR. SHELDON:  That's not an agreement, you know.  His
13    representation that this is how the monies should or would or
14    might be divided, that's not a settlement agreement and it
15    doesn't have the -- any binding force.
16              And so I submit that this fact is completely
17    irrelevant.
18              THE COURT:  You agree that it's a fact?
19              MR. SHELDON:  I don't dispute whatever is in the depo
20    transcript.
21              THE COURT:  Well, I mean, you agree in principle that
22    that's what he said?
23              MR. SHELDON:  Yes.
24              THE COURT:  If not exactly that, something very similar
25    to that?
```

1          MR. SHELDON:  I do.

2          THE COURT:  Okay.  All right.  Have you all thought

3    about going to mediation or trying to resolve this thing or are

4    we just going to have, you know, lawyers fighting over who's

5    representing who and who's deposing what and counterclaims and

6    cross-claims and mandatory claims and everything else?  I mean,

7    does any -- do the parties have any interest in actually

8    resolving this matter or are we just going to keep taking, you

9    know, attorney's fees out of the proceeds of this judgment?

10         MR. SHELDON:  Your Honor, we -- if I may:  We would

11   love for there to be a resolution.  Part of the problem is that

12   my client, Mr. Grootsin, who's the director of RM in Russia,

13   has fiduciary duties to the company.

14         THE COURT:  There's three people in the company.  How

15   many people are in the company?

16         MR. SHELDON:  There are three -- it's an LLC.  They're

17   called participants.  You know, but the point is that, you

18   know, they're like shareholders.  They don't -- they don't

19   speak for the company.  The company is spoken for by its chief

20   executive, who is the director, Mr. Grootsin.

21         Mr. Grootsin has fiduciary duties to the company not to

22   give the company's money away to Mr. Pirozhnikov or Mr. Schmdt.

23         Now, they are not entitled to these monies by virtue of

24   their ownership.  They're entitled to share in the profits of

25   the company.  But before any of those monies become profits,

```
 1   they're first revenues.  They go to creditors; they go to pay
 2   salary.  And so these monies belong to the company.
 3          And so Mr. Grootsin is barred by Russian law from
 4   agreeing to give the company's money away, which is essentially
 5   what Mr. Schmdt and Mr. Pirozhnikov are seeking.
 6          THE COURT:  And what about Mr. Katcaev?  Isn't he
 7   getting something?
 8          MR. SHELDON:  No.  Mr. Katcaev has made no claim
 9   whatsoever to the -- to the settlement monies.  Mr. Katcaev
10   was --
11          THE COURT:  Varwood Holdings is getting --
12          MR. SHELDON:  Varwood Holdings was a plaintiff, was a
13   plaintiff intervenor.  It had its own claims.  And Varwood and
14   RM for the purpose of getting their money reached -- because
15   the settlement agreement failed to indicate how the money
16   should be divided, they were forced after the fact to come to
17   an agreement.  And they have.  And they want their money.  And
18   there's no reason that those monies haven't been distributed
19   yet.  And there's certainly no colorable claim.
20          And, you know, Mr. Frank said, you know, that he's not
21   required to, you know, vet or -- you know, the claims that are
22   made.
23          But I disagree.  An interpleader is typically an
24   insurance company.  You know, as a lawyer, if somebody comes
25   into my office and lays claim to my client's money, it's not
```

 1    appropriate for me to then interplead those funds.  I should

 2    know what my duties to my clients are and who my clients are

 3    and who my clients are not.

 4         THE COURT:  So you think he should just write two

 5    checks, one to RM and one to Varwood?

 6         MR. SHELDON:  Absolutely.  I think that this case

 7    should be voluntarily dismissed and I think he should cut two

 8    checks.

 9         THE COURT:  And what about their allegation that

10    Varwood is basically Katcaev -- you know, Varwood is Katcaev

11    and so that's how Katcaev is --

12         MR. SHELDON:  I mean, it's -- you know --

13         THE COURT:  Is Varwood actually a company that does

14    something?

15         MR. SHELDON:  It is.  It is.  Varwood is a company.  It

16    has an office in Switzerland.

17         THE COURT:  I know it's a company.  That was a bad

18    question.

19         I was finishing that with:  "that does something"?  Or

20    is it just -- there are millions of companies that are around

21    that just sit -- they used to sit in black books.  Now I guess

22    they sit in computers.

23         MR. SHELDON:  Yeah.  You know, I'm not familiar with

24    the scope of all of its businesses.  But my understanding is it

25    has an office.  And in this case, it was the assignee of

1   Mr. Katcaev's individual claims.  It was a -- it was an

2   intervenor plaintiff in the underlying lawsuit.  And it was one

3   of the settling parties to the settlement agreement.

4           You know, there's no dispute that some portion of the

5   settlement funds should go to Varwood.  And really, the only

6   way for that to be decided is between Varwood and RM, who have

7   already made that decision among themselves.

8           THE COURT:  Okay.  All right.  Anything else I can help

9   anybody with?

10          MR. FRANK:  Nothing, your Honor.  Thank you.

11          THE COURT:  All right.  Have a good day.

12          MR. SHELDON:  Thank you, your Honor.

13          MR. FRANK:  You, too.

14          MS. DORSEY:  Thank you, your Honor.

15          (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

```
 1                       C E R T I F I C A T E

 2

 3          I hereby certify that the foregoing is an

 4  accurate transcription of the proceedings in the

 5  above-entitled matter.

 6

 7
                              /s/Lisa Edwards
 8  _____           LISA EDWARDS, RDR, CRR
         DATE                 Official Court Reporter
 9                            United States District Court
                              400 North Miami Avenue, Twelfth Floor
10                            Miami, Florida 33128
                              (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```